# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2905 | DATE | 12/2/02 |
| CASE TITLE | Ex Rel Peter Lewis vs. Jerry L. Sternes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Petitioner's ineffective assistance of counsel claim is dismissed in part. His other claims are dismissed in their entirety. Respondent is directed to file a supplemental answer to the remaining ineffective assistance of counsel claim and to file the record of the proceedings in the trial court and on post-conviction by January 24, 2003. Petitioner is directed to reply to the supplemental answer by February 28, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices: 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 0 9 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 16 |
| | Mail AO 450 form. | | DEC 0 9 2002 | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| OR | courtroom deputy's initials | 02 DEC -8 PM 12:54 | mailing deputy initials | |
| | | Date/time received in Central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. PETER LEWIS,<br><br>Petitioner,<br><br>vs.<br><br>JERRY L. STERNES,<br>Warden of Dixon Correctional<br>Center,<br><br>Respondent. | Case No. 02 C 2905<br><br>DOCKETED<br>DEC 09 2002 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Before the Court is Peter Lewis's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons stated below, we dismiss three of Lewis's habeas claims and part of his ineffective assistance of counsel claim and direct respondent to supplement his answer to petitioner's remaining claim.

### BACKGROUND

In the early morning hours of November 18, 1995, an intruder entered the apartment of three University of Chicago students, Genevieve Jancovic, Susan Mathis, and Scelino Ullegue. Jancovic, who had left her bedroom and was in the hallway, saw the intruder in the bedroom of Ullegue, who was not present at the time of the incident. Jancovic screamed, called the police, and barricaded herself in her room. Mathis, awakened by the commotion, saw the intruder enter her room and also screamed. The man ran out of her room and fled the apartment. Thirty minutes later, police apprehended Lewis based on the victims' descriptions and took him back to

16

the scene of the burglary. There the officers asked the victims whether they could identify Lewis. At trial, both Jancovic and Mathis identified Lewis as the intruder. Lewis was convicted of residential burglary and sentenced to twenty years in prison.

Some detail from Lewis's perspective about the events surrounding his conviction is warranted, as it bears on his habeas corpus claims. Lewis claims that when he was brought to the victims' apartment, he was the only person shown to the victims while a group of police officers surrounded him. Pet. for Post-Conviction Relief at 5-6. Moreover, he contends that at the show-up, the victims were initially unable to identify him as the offender. *Id.* at 10. According to his account, they asked the officers whether Lewis was wearing clothes that matched a Girbaud-brand button the victims had found in Ullegue's bedroom, where Jancovic originally saw the intruder. Resp. to Mot. to Withdraw as Counsel at 3. It was only after the button was compared to Lewis's jeans that the officers arrested him for burglary. Moreover, once at the police station, Lewis submits that he was not put in a line-up. Instead, he claims that one of the arresting officers pointed him out to the victims as he was handcuffed to a wall. As regards Lewis's jeans, they were prematurely destroyed before trial in a police evidence storage facility. At trial, one of the arresting officers testified that the button recovered at the scene – which was not destroyed – matched the jeans Lewis was wearing at the time of the incident. Lewis maintains that had the jeans been properly preserved, they would have exculpated him because, he claims, it was impossible for the button to have come from those jeans.

On direct appeal, Lewis raised one issue – that the trial judge did not adequately question prospective jurors after one of them was excused for expressing her opinion about the case in the other prospective jurors' presence. The Illinois Appellate Court affirmed Lewis's conviction on

2

December 10, 1998, and the Illinois Supreme Court denied his petition for leave to appeal on March 31, 1999.

On September 26, 1999, Lewis filed a *pro se* petition for post-conviction relief in which he raised, for the first time, claims of ineffective assistance of trial and appellate counsel. The grounds Lewis cited to support his claim of ineffective trial counsel included the following: failure to subpoena the arresting police officers, who, he claimed, would have testified that the victims were originally unable to identify him; failure to object to the victims' in-court identification of Lewis, which he claimed was based on the allegedly overly suggestive show-up; failure to subpoena Lewis's jeans before they were destroyed; failure to object to the button's introduction into evidence; failure to subpoena Ullegue, in whose room the button was found; failure to examine the crime scene or introduce a sketch of the victims' apartment; and failure to request a bill of particulars. Lewis's claim of ineffective assistance of appellate counsel was based on appellate counsel's failure to raise any of the above claims that may have been apparent from the trial record.

On November 12, 1999, the trial court summarily dismissed Lewis's petition as patently frivolous without holding a hearing. On November 16, 1999, probably before he had received the court's ruling, Lewis moved to amend his post-conviction petition to include the following claims: ineffective assistance of appellate counsel for failure to challenge on direct appeal both the court's failure to answer several questions posed by the jury during their deliberations and the court's denial of Lewis's *Batson* motion, *see Batson v. Kentucky*, 476 U.S. 79 (1986); the state's failure to prove him guilty beyond a reasonable doubt; and the trial judge's error in overruling his objection to the State's closing argument. The motion to amend also challenged Lewis's

3

sentence, claiming that the state failed to prove his eligibility for an enhanced penalty. On December 14, 1999, the trial court summarily denied the motion to amend.

On appeal, Lewis's appointed counsel argued that his post-conviction petition had raised at least the "gist of a constitutional claim" and alleged facts sufficient to require a post-conviction hearing – namely trial counsel's failure to call witnesses on his behalf. Br. and Argument for Def.-Appellant from Post-Conviction Dismissal at 4. The appellate court disagreed and affirmed the dismissal of both Lewis's post-conviction petition and his motion to amend (which the court characterized as a second post-conviction petition).

On July 12, 2001, Lewis filed a *pro se* petition for leave to appeal to the Illinois Supreme Court from the denial of his post-conviction petitions. Lewis raised several claims: 1) the trial court erred in failing to make an adequate inquiry of the remaining prospective jurors after one of them expressed an opinion about the case, in denying his *Batson* motion, in not answering the jurors' questions during their deliberations, and in imposing an enhanced sentence; 2) the appellate court erred in affirming his conviction because he was not proven guilty beyond a reasonable doubt; 3) the trial court on collateral attack erred in dismissing his post-conviction petition; and 4) ineffective assistance of counsel on appeal from the dismissal of his post-conviction petition. On August 31, 2001, Lewis filed a motion to amend his petition for leave to appeal, raising the following claims: 1) his jeans were destroyed before trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); 2) ineffective assistance of trial counsel for failure to examine the jeans before they were destroyed and for failure to provide Lewis with the necessary trial records for his post-conviction appeal; and 3) ineffective assistance of post-conviction appellate counsel for failure to raise the *Brady* violation. The Illinois Supreme Court denied Lewis's

4

petition for leave to appeal on December 5, 2001.

On April 22, 2002, Lewis filed this habeas corpus petition. In it, Lewis raises four claims: 1) he was subjected to an overly suggestive identification procedure in violation of the Sixth Amendment; 2) exculpatory evidence was destroyed before his trial in violation of *Brady v. Maryland*; 3) the trial court violated his Sixth Amendment rights by denying the jury's request for more information during its deliberations and by denying his *Batson* motion; and 4) ineffective assistance of trial counsel.

## ANALYSIS

A federal court may issue a writ of habeas corpus only if the petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). A federal court cannot grant habeas relief unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a petition for habeas corpus, the petitioner must "(1) exhaust all remedies available in state courts, and (2) fairly present any claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Exhaustion is not an issue in this case. Lewis unsuccessfully pursued both a direct appeal of and a collateral attack on his conviction. He therefore has no further avenue of relief in state court. *Cf. Coleman v. Thompson*, 501 U.S. 722, 732 ("A habeas petitioner who has defaulted his federal

claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Respondent claims that all four of Lewis's habeas claims are, however, procedurally defaulted.

## A.  Procedural Default

Procedural default occurs when the petitioner fails to present a claim to the state courts at the time and in the way required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." (citing *Coleman*, 501 U.S. at 729-44)). Under Illinois law, issues that could have been raised on direct appeal but were not are considered forfeited. *People v. Coleman*, 168 Ill. 2d 509, 522, 660 N.E.2d 919, 927 (1996). And failure to pursue in a state post-conviction petition those claims that could not have been brought on direct appeal results in a forfeiture of those claims. *See Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir. 1991).

Principles of comity and federalism dictate that the state court must have "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). A federal court therefore cannot address the merits of constitutional claims brought in a petition for habeas corpus relief unless the state courts have had a full and fair opportunity to review them. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). This means that to avoid procedural default, a petitioner must afford the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*; *Verdin v. O'Leary*, 972 F.2d 1467, 1473 (stating that it is "well-established" that "the issue of fair presentment is a useful approach for analyzing

6

procedural default"). A full opportunity for review means that a petitioner must not only raise his claims with the intermediate appellate courts, but must also raise them in an appeal to the state's highest court, even where the appeal is discretionary. Lewis therefore "forfeits the right to raise an issue he failed to raise in direct or post-conviction review." *Farrell*, 939 F.2d at 411.

For a constitutional claim to be fairly presented to a state court, "both the operative facts and the 'controlling legal principles' must be submitted to that court." *Verdin*, 972 F.2d at 1474 (quoting *Picard*, 404 U.S. at 277). The reason behind this requirement is "to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Id.* The petitioner's argument to the state court must:

> (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 1473-74 (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1393 (7th Cir. 1992)).

A number of Lewis's claims are procedurally defaulted for failure to raise them at all the requisite stages in state court. Lewis's first claim is that the victims' ability to identify him at trial was based on an overly suggestive identification procedure that violated the Sixth Amendment. This claim is procedurally defaulted because Lewis did not raise it in either his direct appeal or his state post-conviction petition. Although several of Lewis's submissions to the state courts contain allegations of a questionable identification process, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). The petitioner must inform the state courts of the legal basis for his claim. *Verdin*, 972 F.2d at 1474. Lewis referenced the allegedly questionable

7

identification procedure, but he only did so in the context of his claim of ineffective assistance of trial counsel, namely in his claim that trial counsel should have objected to the witnesses' identifications. Pet. for Post-Conviction Relief at 12; Pet. for Leave to Appeal at 7-8. Detailing facts that might support a claim of an overly suggestive identification procedure in a claim for ineffective assistance is insufficient under *Verdin* to alert the state court that he is attacking the constitutionality of the identification procedure itself. *Verdin*, 972 F.2d at 1473-74; *cf. id.* at 1475 ("A federal constitutional claim may be 'inherent' in the facts, but not recognizable as such without further elaboration." (quoting *Picard*, 404 U.S. at 277)).

Lewis's claim that exculpatory evidence was destroyed before trial in violation of *Brady v. Maryland* is also procedurally defaulted. Lewis did not raise this claim in his direct appeal, his post-conviction petition, or his petition for leave to appeal. Though Lewis did discuss the destruction of his jeans in the state courts, he did so as part of his claim of ineffective assistance of counsel. Pet. for Post-Conviction Relief at 11-12; Pet. for Leave to Appeal at 8. Again, this was insufficient to apprise the state courts of the "legal theory on which his claim is based." *Verdin*, 972 F.2d at 1474.

Lewis's third claim is that the trial judge violated his Sixth Amendment rights by denying the jury's request for further information and by denying Lewis's *Batson* motion. Lewis raised this claim for the first time in his petition for leave to appeal from the dismissal of his post-conviction petition; it is therefore procedurally defaulted. Although Lewis discussed both of these alleged errors by the trial judge in his petition to amend his post-conviction petition, he did so only as part of an argument that his appellate counsel provided ineffective assistance by failing to raise these violations on direct appeal. By neglecting to raise a Sixth Amendment claim based

8

on these issues until his petition for leave to appeal, Lewis did not afford the state courts a full and fair opportunity to resolve this constitutional issue because he failed to "invoke[] one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845; *Farrell*, 939 F.2d at 411.

Lewis's last claim is that his trial counsel was ineffective in violation of the Sixth Amendment. Lewis bases this claim on various grounds. First, he states that trial counsel failed to examine his jeans before they were destroyed. He claims that an examination would have proven his innocence by demonstrating that the jeans could not have been the source of the button found in the victims' apartment. Second, he claims counsel was ineffective for failing to suppress the victims' pretrial identification of Lewis, which, he claims, was the product of an overly suggestive identification. Third, Lewis points to counsel's failure to object to the destruction of his jeans as a violation of *Brady v. Maryland*. Fourth, he states that counsel failed to call exculpatory witnesses: he claims that counsel should have called Ullegue because the button was found in his room and he therefore could have explained its true source. Lewis also contends that counsel should have called Jared Stallard, a friend of the victims who was in the apartment during the incident and was present at the show-up. Lewis claims Stallard could have testified that the victims were initially unable to identify Lewis and that a suggestive identification took place at the station.

Respondent maintains that Lewis's ineffective assistance claim is also procedurally defaulted. However, respondent only addresses two of the four grounds Lewis cites – counsel's failure to move to suppress the victims' pretrial identification and her failure to examine Lewis's jeans. We therefore consider only whether these two grounds are defaulted.

9

We agree with respondent that Lewis's claim regarding counsel's failure to seek the suppression of the identification is procedurally defaulted. Although Lewis raised counsel's failure to object to the identification in his post-conviction petition and before the Illinois Appellate Court, he did not raise it in his petition for leave to appeal to the Illinois Supreme Court. *Boerckel*, 526 U.S. at 845.

As for counsel's failure to investigate Lewis's jeans, respondent argues that Lewis raised this claim only in his amended post-conviction petition but did not include it in his petition for leave to appeal. Respondent is incorrect. Lewis did raise this claim in his petition for post-conviction relief. Pet. for Post-Conviction Relief at 10-11. This claim was also preserved in his petition for leave to appeal. Although he addressed this issue under a heading invoking his claim of ineffective assistance of appellate counsel, Lewis discussed trial counsel's failure to investigate the button-related evidence and shortly thereafter cited *Strickland v. Washington*, 466 U.S. 668 (1984), the quintessential case concerning ineffective assistance of counsel. Pet. for Leave to Appeal at 6. This was sufficient to apprise the state courts of the nature of his claim under *Verdin*. See *Verdin*, 972 F.2d at 1473-74.

## B.  Excuses for Procedural Default

On his procedurally defaulted claims, Lewis "may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice." *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). Lewis does not argue that he had cause for the defaults. In fact, he does not believe any of his claims are procedurally defaulted and cites this Court to prior submissions in the state courts where he says he raised the claims or presented facts that could support them. As

10

discussed above, such partial submissions to the state courts are insufficient to avoid procedural default.

Absent a showing of cause and prejudice, the Court asks whether its failure to examine defaulted claims would result in a "fundamental miscarriage of justice." The miscarriage of justice exception has been narrowly construed. A petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Thomas*, 201 F.3d at 999 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)) (internal quotation marks omitted). In this case, Lewis generally asserts that were it not for the claimed constitutional violations, he would not have been convicted of burglary. Yet Lewis fails to support this assertion with any evidence that he is actually innocent and therefore fails to meet the rigorous legal standard required to fall within the miscarriage of justice exception. Accordingly Lewis has forfeited federal habeas review of his procedurally defaulted claims.

## CONCLUSION

For the foregoing reasons we find the following claims in Lewis's habeas petition to be procedurally defaulted: 1) the overly suggestive identification process in violation of the Sixth Amendment; 2) the destruction of evidence in violation of *Brady v. Maryland*; and 3) ineffective assistance of counsel for failure to suppress the victims' identification. We therefore dismiss these claims pursuant to our authority under Rule 4 of the Rules Governing Section 2254 Cases.

Three of Lewis's ineffective assistance claims remain: 1) counsel's failure to investigate Lewis's jeans before they were destroyed; 2) counsel's failure to object to the *Brady* violation; and 3) counsel's failure to call exculpatory witnesses. Respondent is directed to file a supplemental answer to petitioner's remaining claims and to file the record of the proceedings in the trial court and on post-conviction by January 24, 2003. Petitioner is directed to reply to the supplemental answer by February 28, 2003.

MATTHEW F. KENNELLY
United States District Judge

Date: December 2, 2002